## SUPREME COURT.

### William Brown agt. Jacob Weber, Jr.

H. having made a contract with the defendant to build him a saw mill on his lands, after part performance, made a sub-contract with the plaintiff to complete the job. The plaintiff commenced work accordingly, but a few days after went to the defendant, informed him he had learned H. was irresponsible, and declined going on with the job. The defendant, to induce the plaintiff to go on and finish the mill, promised that "he would see that plaintiff did not lose anything by it," and that "he would see that plaintiff got his pay." *Held*, that the promise was a collateral undertaking, and not being in writing was void by the statute of frauds. Campbell, J., dissented.

And it appearing further that while the plaintiff was finishing the job, he and his hands boarded with defendant, under a contract between the parties, and that the defendant furnished some materials to be used in the work, which, under the original contract, H. and plaintiff were to find. *Held*, also, that the defendant was entitled to recover the value of such board and materials in this action of the plaintiff.

——— *General Term*, 1862.

Balcom, Parker and Campbell, *Justices*.

Brown agt. Weber.

THE defendant entered into an agreement in writing, under seal, with William W. Horton, bearing date the 13th day of December, 1855, by which the latter bound himself to build a saw-mill for the defendant on *his lands*, in the town of Roseboom, in a manner therein specified, and furnish all the materials therefor, and complete and have it ready " for running, in a good workmanlike manner, by the 25th of August, 1856." The defendant was to pay Horton $600 for building the mill and furnishing the materials— $300 when the frame was up, and $300 on the 1st day of November, 1856. Horton and the defendant altered said agreement in some respects, by writing under seal executed by them, bearing date the 2d day of July, 1856. Horton framed and raised the mill, and afterwards on the 17th day of July, 1856, entered into an agreement in writing, under seal, with the plaintiff, whereby the plaintiff bound himself to Horton to go on and finish and fully complete said mill, ready and fit for business, so far as the carpenters' and mill-wright work was included, in a good workmanlike manner, on or before the 25th day of August, 1856, Horton agreeing to furnish all the materials for the same, for which Horton was bound to pay the plaintiff $110 on the 1st day of November in the same year, by passing over to the plaintiff an obligation in writing executed by the defendant for $110, payable on the first day of November aforesaid. On the 18th day of July, 1856, Horton and the plaintiff, by a writing under seal, signed by them and dated that day, changed their said agreement, bearing date the previous day, so as to bind the plaintiff to furnish all the materials necessary for finishing the saw-mill and flume, and to cover the mill, except such as were then on hand, and the castings named in Horton's contract with the defendant; and in consideration thereof, Horton was to pay the plaintiff the further sum of $90, making $200 in all the plaintiff was to receive of Horton; and it was stipulated that the whole $200 should be paid by Horton to the plain-

tiff, by defendant's note payable the 1st day of November, 1856. The plaintiff commenced work upon the mill about the 17th day of July, 1856, under the contracts with Horton, bearing date July 17th and 18th of that year. He continued to work on the mill until about the 15th day of September, 1856, when it was ready to run, and the defendant commenced sawing in it.

The plaintiff sought to recover in this action of the defendant for the work performed by him (plaintiff) in building the mill. He claimed that he did the work under a promise of the defendant to pay him therefor; and that he had performed his contracts with Horton, and built the mill in accordance with the contracts between the defendant and Horton, except in some respects, of which the defendant approved.

The action was tried before a referee, who found that the plaintiff commenced work on the mill under the contracts he made with Horton of July 17th and 18th, 1856; that "after said commencement on the said mill, the plaintiff became fearful that Horton was not responsible for the performance of the contracts aforesaid, on his (Horton's) part, which he communicated to defendant Weber;" "that the defendant, to induce the plaintiff to go on and finish the mill according to the contract, did promise the plaintiff that if he would go on and finish the mill according to contract, he would see that plaintiff did not lose anything by it. Also, that defendant told plaintiff that he would see that plaintiff got his pay, if plaintiff finished the mill according to contract,"—meaning the contract between the defendant and Horton, dated December 13, 1855, as altered on the 2d day of July, 1856; "that plaintiff went on and finished the mill according to the contracts between said defendant and Horton, with the following exceptions, viz: the said mill was not all inclosed; that some of the sheeting on the roof were more than one foot apart. There were no trap doors for saw-dust to pass down; the hinges

to the fall doors were not of sufficient strength and size to hold them; the main water wheel was from four to six inches higher than in the old mill; the carriage was not made long enough to saw a twenty-four foot log; that the mill was not completed by the 25th of August, 1856;" "that the plaintiff and his hands quit work about the 15th day day of September, 1856, and did not after that work on said mill; that during the time plaintiff and his hands were at work, the defendant was often at the mill, and expressed his approbation of the work as it progressed up to the time Brown and his hands left the mill, except the single instance of the hinges to the fall doors. Also, that defendant about the time plaintiff and his hands left the mill, and afterwards, used the mill for sawing purposes;" but that he used the mill pursuant to an understanding or agreement between him, Horton and the plaintiff, " that it should not be regarded as an acceptance of the mill." The referee also found that there was affirmative evidence that plaintiff regarded his contracts with Horton as being in full force. The referee held that the plaintiff could not recover upon the defendant's promise that he would see that plaintiff had his pay for his work, or should lose nothing if he would go on and finish the mill according to contract, because such promise was void by the statute of frauds. The plaintiff and his hands boarded with defendant while they worked on the mill, under an agreement (as found by the referee) by which the plaintiff was to pay defendant therefor $2 per week for each person boarded; and for this board and some other account, the referee found the plaintiff was indebted to the defendant the sum of $49.66. Judgment was entered against the plaintiff for that sum with costs. The plaintiff's counsel took exceptions on the trial, and also excepted to the findings of the referee. The plaintiff appealed from the judgment to the general term of the court.

E. COUNTYRMAN, *for appellant.*

A promise cannot be collateral within the statute of frauds when a party simply answers for what accrues to his own individual benefit. So long as the promisor is *the* person interested, his promise cannot be to answer for *another person* within the meaning of the statute, although such other person may have also made a like engagement with the promisee. Indeed, the rule may now be considered settled in this state, that where the new promise is founded on a consideration of *benefit or advantage to the promisor*, who is directly *interested in the performance* of the contract, it is valid, although the original debt be still subsisting, and the liability of the original debtor remaining in full force. (*Leonard* agt. *Vredinburgh*, 8 *Johns.*, 23–31; *Harrison* agt. *Lawtell*, 10 *Johns.*, 242; *Myers* agt. *Morse*, 15 *Johns.*, 424; *Farley* agt. *Cleveland*, 4 *Cow.*, 432; *id.*, 9 *Cow.*, 639, *in Court of Errors*; *Gardner* agt. *Hopkins*, 5 *Wend.*, 23; *King* agt. *Despard*, 5 *Wend.*, 277; *Meech* agt. *Smith*, 7 *Wend.*, 318, 319; *Rogers* agt. *Kneeland*, 13 *Wend.*, 114; *Mather* agt. *Perry*, 2 *Denio*, 162; *Colgan* agt. *Aymar*, *Lalor's Sup. to Hill and Denio*, 27; *Flanders* agt. *Crolius*, 1 *Duer*, 206; *Stilwell* agt. *Otis*, 7 *Abb.*, 431; *Brown* agt. *Curtis*, 2 *Coms.*, 225; *Mallory* agt. *Gillett*, 21 *N. Y.*, 412; *See also Nelson* agt. *Boynton*, 3 *Metcalf*, 396; 2 *Parsons on Contracts*, 305; *Quintard* agt. *DeWolf*, 34 *Barb.*, 97; *Devlin* agt. *Woodgale*, *id.*, 252.)

JAMES E. DEWEY, *for respondent.*

The promise is incontestably "to answer for the debt, default or miscarriage of another," and is *within all the mischiefs* which the statute to prevent frauds and perjuries was designed to remedy. (3 *R. S.*, 221, 5*th ed.*, § 2; *Barber* agt. *Fox*, 1 *Stark.*, 270; *Mallory* agt. *Gillett*, 23 *Barb.*, 610, *affirmed in court of appeals, September term*, 1860; *Lar-*

*son* agt. *Wyman*, 14 *Wend.*, 246; *Carrille* agt. *Cram*, 5 *Hill*, 485; *Brown* agt. *Bradshaw*, 1 *Duer*, 199; *Curtis* agt. *Brown*, 5 *Cush.*, 488–492; 14 *Barb.*, 570.)

1. The expressions used, "would *see* that plaintiff did *not lose anything by it*," and "would *see* that plaintiff *got his pay*," plainly import an intent to guarantee performance by another, not that the promissor himself will pay. (*Smith* agt. *Harris*, 2 *Stark.*, 48; *Thompson* agt. *Bond*, 1 *Campb.*, 6; *Keate* agt. *Temple*, 1 *Bos. & Pull.*, 158; *Watkins* agt. *Perkins*, 1 *Lord Raymond*, 224; *Matson* agt. *Wharam*, 2 *Term R.*, 80; *Brown* agt. *Bradshaw*, 1 *Duer*, 199–201; *Cahill* agt. *Bigelow*, 18 *Pick.*, 369–372; *Brown's Statute of Frauds*, 198, § 199.)

2. If *any* credit was given to Horton, the promise was collateral and void. (*Brown's Statute of Frauds*, 195–7; *Anderson* agt. *Hayman*, 1 *H. Bl. R.*, 120; *Brady* agt. *Sackrider*, 1 *Sandf.*, 514.)

3. Whether credit was given to Horton or to the defendant, was exclusively a question of fact, (*Brown's Statute of Frauds*, 199, § 199,) which has been found against the plaintiff.

By the court, BALCOM, Justice. The referee did not commit any error in the case, unless it was in holding that the plaintiff could not recover upon the promise of the defendant, to see the plaintiff did not lose anything or should get his pay, if he would go on and finish the mill according to the contracts between Horton and the defendant. After the plaintiff commenced working on the mill, he became fearful that Horton was not responsible for the performance of those contracts, and communicated that fact to the defendant. The defendant, " to induce the plaintiff to go on and finish the mill according to those contracts," then made the promise to the plaintiff which I have mentioned. The referee held this promise was void by the statute of frauds, (2 *R. S.*, 135, § 2, *sub.* 2.) The controlling ques-

tion in the case, therefore, is, whether this was a " special promise to answer for the debt, default or miscarriage of another person." If it was such a promise, it was void, because it was not in writing. The plaintiff's counsel insists that the promise made was not collateral but original; that the consideration for it was beneficial to the defendant, and therefore binding upon him. If the referee had found that the plaintiff abandoned his contracts with Horton, or refused to go on under them, and that thereupon the defendant promised him if he would go on and finish the mill, in the manner specified in the contracts between Horton and the defendant, he would see the plaintiff did not lose anything, or should be paid for his work, and that the plaintiff relying upon such promise did go on and complete the mill, the defendant would be bound to pay the plaintiff for all the work he performed subsequent to such promise. But the referee has not found that the plaintiff abandoned his contracts with Horton or refused to go on under them; and has found there was affirmative evidence that the plaintiff regarded those contracts as being in full force. It therefore seems to be very clear, if the plaintiff completed the mill so the defendant was satisfied it answered the contracts between him and Horton, he could have recovered of Horton the price he agreed to pay the plaintiff therefor. And it is equally clear that the promise of the defendant " to see the plaintiff got his pay," or should not lose anything if he would go on and complete the mill, was collateral, and a special one to answer for the debt, default or miscarriage of Horton. The most that can be claimed on the part of the plaintiff, is that the promise of the defendant induced the plaintiff to go on and perform his contracts with Horton; and that the defendant assumed to be surety for Horton's performance of those contracts. The plaintiff was still in the employ of Horton, and was not at any time servant or employee of the defendant. Horton remained the principal debtor of the plaintiff. It follows

that the defendant is not liable on his promise, because it was not in writing.

I have not thought it necessary to cite authorities to sustain any of the foregoing views, or deemed it profitable to comment upon any of the decisions relied upon by the counsel for either party. I will only say, I have examined all the authories cited upon the points of the counsel in the cause.

The judgment in the action should be affirmed with costs.

PARKER, J., concurred. CAMPBELL, J., dissented, and delivered a dissenting opinion.

Judgment affirmed with costs.